UNITED STATES  DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RONNIE WHITE                                        CIVIL ACTION

versus                                              NO. 06-1576

N. BURL CAIN, WARDEN                                SECTION: "R" (3)

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).[1]  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1]  Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination.  According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Ronnie White,[2] is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On May 31, 2000, he was convicted of armed robbery in violation of La.Rev.Stat.Ann § 14:64.[3]  On August 15, 2000, he was sentenced to a term of forty-nine and one-half years imprisonment, without benefit of parole, probation, or suspension of sentence, with credit for time served.[4]  On July 30, 2001, the Louisiana Fifth Circuit Court of Appeal affirmed his conviction and sentence.[5]  He then filed with the Louisiana Supreme Court an application for writ of certiorari and/or review which was denied on September 13, 2002.[6]

On or about January 13, 2003, petitioner filed with the state district court an application for post-conviction relief.[7]  That application was denied on June 28, 2004.[8]  Petitioner next filed with the Louisiana Fifth Circuit Court of Appeal an application for a supervisory writ

---

[2] In the record, petitioner is referred to both as "Ronnie White" and "Ronny White."

[3] State Rec., Vol. I of II, minute entry dated May 31, 2000.

[4] State Rec., Vol. II of II, transcript of August 15, 2000, p. 22; State Rec., Vol. I of II, minute entry dated August 15, 2000.

[5] State v. White, 792 So.2d 146 (La. App. 5th Cir. 2001) (No. 01-KA-134); State Rec., Vol. II of II.

[6] State v. White, 824 So.2d 1190 (La. 2002) (No. 2001-KO-2439); State Rec., Vol. II of II.

[7] State Rec., Vol. II of II.

[8] State Rec., Vol. II of II, Order dated June 28, 2004.

which was denied on July 27, 2004.[9]  He then filed with the Louisiana Supreme Court an application

for supervisory and/or remedial writs which was denied on August 19, 2005.[10]

On or about March 6, 2006, petitioner filed this federal application for *habeas corpus*

relief.[11]  In support of his application, petitioner claims:

1.      Petitioner was denied the right to testify in his own defense;

2.      Petitioner received ineffective assistance of counsel; and

3.      The trial judge improperly limited defense counsel's

opportunity to cross-examine a witness.

The state does not challenge the timeliness of petitioner's federal application and

concedes that he exhausted his state court remedies.[12]  Accordingly, this Court will address the

merits of petitioner's claims.

<u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254.

Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact,

questions of law, and mixed questions of law and fact.  Provided that the state court adjudicated the

---

[9] <u>State *ex rel.* White v. Cain</u>, No. 04-KH-887 (La. App. 5th Cir. July 27, 2004) (unpublished); State Rec., Vol. II of II.

[10] <u>State v. White</u>, 908 So.2d 684 (La. 2005) (No. 2004-KH-2403); State Rec., Vol. II of II.

[11] Rec. Doc. 3.

[12] Rec. Doc. 10.

claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under

§ 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2).  Hill v. Johnson, 210 F.3d 481,

485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer

to the state court's decision unless it "was contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United States."  28

U.S.C. § 2254(d)(1).   The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses
> have independent meaning.  A federal habeas court may issue the
> writ under the "contrary to" clause if the state court applies a rule
> different from the governing law set forth in our cases, or if it decides
> a case differently than we have done on a set of materially
> indistinguishable facts.   The court may grant relief under the
> "unreasonable application" clause if the state court correctly
> identifies the governing legal principle from our decisions but
> unreasonably applies it to the facts of the particular case.  The focus
> of the latter inquiry is on whether the state court's application of
> clearly established federal law is objectively unreasonable, and we
> stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an
> unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

Facts

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts

of this case as follows:

> On September 9, 1999, at approximately 9:30 a.m., Ronny
> White and Bryan Loper asked Charles Holmes to go for a ride with
> them in Loper's girlfriend's white Toyota 4 Runner.  While riding,
> they passed the Hibernia Bank in Norco several times before parking
> at a location which was two to three blocks away from the bank.
> White and Loper exited the vehicle and they told Holmes that they

- 4 -

would return shortly.  At the time, White was wearing a blue and white stripped shirt and blue pants.  Loper had on a long-sleeved shirt and blue pants. Each man wore a cap.

On that day, at approximately 10:15 a.m., Scott Adams was working as the branch manager at the Hibernia Bank in Norco.  He noticed two black men enter the bank through the front door.  The men each brandished a gun and demanded money.  One man had a revolver and the other an automatic weapon.  Both men had on ski masks, baseball caps and sunglasses.  The man in the blue and white striped shirt had on white garden gloves.  This gunman was later described as being approximately 6' to 6' 2" and stocky.

The gunmen ordered the bank employees to get down on the floor.  As the central teller descended to the floor, she set off the bank's alarm.  The assailant in the striped shirt went behind the counter and removed money from one of the teller's drawers.  He demanded more money.  The branch manager, Scott Adams, opened two more teller drawers and the money was taken.  Adams estimated that the amount of money taken was $36,000.00.  The gunmen ran out the front door and through an open field located next to the bank and between St. Charles Street and Goodhope Street.

As the gunmen ran from the bank, they were observed by an employee and customer of the Dollar General Store, located across the street from the bank.  The employee, Donna Victor, heard a bomb-like sound and saw red powder.  One suspect dropped the bag when the dye bomb exploded and the other suspect ran to retrieve it. Ms. Victor called 911.

When the two assailants returned to the 4 Runner, Holmes saw the red dye and asked what had happened.  White told him that he and Loper had just robbed the bank.  White had changed clothes. Loper removed his long-sleeved shirt to reveal a T-shirt.  Loper got into the front driver's seat and White sat behind him in the vehicle. They drove off headed to Holmes's house to drop him off.

A delivery worker, Lynn Dufrene, was working between Goodhope and Apple Streets, on River Road, on that day.  She saw two men run out of a field and get into a white Toyota 4 Runner, which was parked on the sidewalk.  One of the men was wearing white gloves.  Ms. Dufrene pulled into the bank's lot, saw the sign in the bank, and knew there had been a robbery.  She told a policeman, in the bank's parking lot, what she had seen.  He radioed the dispatcher with a description of the men and the vehicle.

Within five minutes of the radio broadcast, Lt. Edward Nowell of the St. John the Baptist Sheriff's Office spotted the white

4 Runner with the black male occupants traveling on Highway 61 towards the St. Charles Parish line. The vehicle was stopped and the three black male occupants were removed, arrested and placed in two police cars.

Scott Adams, the bank manager, was transported to the scene where the vehicle was located. He looked in the vehicle and was able to identify the striped shirt and a baseball cap.

The vehicle was inventoried by crime scene technician, Sgt. Billy LeBlanc, of the St. Charles Sheriff's Office. He removed a Smith and Wesson, Model 15.38 special, with 6 rounds of live ammunition from the floor of the vehicle. He also removed a Lorcin Model L. 9mm semiautomatic, with 13 rounds of live ammunition from the floor of the 4 Runner. Clothing removed from the vehicle included a white T-shirt, a striped shirt stained with red dye, a long-sleeved white shirt, sunglasses, two baseball caps, a camouflaged mask and garden gloves. Documents and credit cards bearing the names of Ronny White and Bryan Loper were also removed from the interior of the vehicle. The vehicle contained red dye on the left door handle. The vehicle was photographed and dusted for prints. [FN2] Money was recovered in an area covered with red dye located in the vacant lot to the east of the bank.

> [FN2] The camera broke and these photos were lost. No identifiable prints were found.[13]

### Denial of Right to Testify/Ineffective Assistance of Counsel

Petitioner claims that his trial counsel refused to allow him to testify in his own defense at trial. He further claims that his counsel's action constituted ineffective assistance of counsel.[14] When petitioner presented these claims during his post-conviction proceedings, the state

---

[13] State v. White, 792 So.2d 146, 149-50 (La. App. 5th Cir. 2001) (No. 01-KA-134); State Rec., Vol. II of II.

[14] Presented as two separate claims by petitioner, the claims are interrelated and will be discussed together for ease of analysis.

district court denied the claims, finding that petitioner had failed to meet his burden of proof.[15]  The Louisiana Fifth Circuit Court of Appeal found "no error" in that ruling,[16] and the Louisiana Supreme Court denied petitioner's related writ application without assigning reasons.[17]

"[I]t cannot be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense."  Rock v. Arkansas, 483 U.S. 44, 49 (1987).  However, petitioner has offered no proof whatsoever that counsel in fact prevented him from testifying.

Petitioner does not allege and the record does not suggest that petitioner ever made known to the trial court that his counsel was refusing to allow him to testify despite his stated desire to do so.  Of course, the mere fact that petitioner failed to stand up in open court and insist on testifying should not be dispositive of the issue.  See United States v. Mullins, 315 F.3d 449, 455 (5th Cir. 2002); see also United States v. Araujo, 77 Fed. App'x 276 (5th Cir. 2003), cert. denied, 543 U.S. 849 (2004).  Nevertheless, the Court cannot ignore the fact that petitioner has never presented any evidence whatsoever either to the state courts or to this Court to corroborate his allegations.[18]

---

[15]  State Rec., Vol. II of II, Order dated June 28, 2004.

[16]  State ex rel. White v. Cain, No. 04-KH-887 (La. App. 5th Cir. July 27, 2004) (unpublished); State Rec., Vol. II of II.

[17]  State v. White, 908 So.2d 684 (La. 2005) (No. 2004-KH-2403); State Rec., Vol. II of II.

[18]  Rather, petitioner only points to questions defense counsel asked during voir dire concerning whether the potential jurors would draw any negative inference from petitioner's failure to testify. Those questions show, at most, that counsel anticipated that petitioner would not testify.  However, one cannot infer from those questions that petitioner wanted to testify or that counsel refused to allow him to do so.

Without more, petitioner's bare allegations are insufficient to trigger either the granting of relief or further fact-finding by this Court.  As the United States Seventh Circuit Court of Appeals noted in a case in which a petitioner alleged that he had been denied the right to testify by his counsel:

> There is grave practical difficulty in establishing a mechanism that will protect a criminal defendant's personal right (that is, a right not waivable by counsel) to testify on his own behalf without rendering the criminal process unworkable.  It is extremely common for criminal defendants not to testify, and there are good reasons for this, as we have seen.  Yet it is simple enough after being convicted for the defendant to say, "My lawyer wouldn't let me testify. Therefore I'm entitled to a new trial." ...
>
> ... [A] barebones assertion by a defendant, albeit made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him.  It just is too facile a tactic to be allowed to succeed.  Some greater particularity is necessary – and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify – to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim.

Underwood v. Clark, 939 F.2d 473, 475-76 (7th Cir. 1991); see also Turcios v. Dretke, No. Civ. A. H-97-0515, 2005 WL 3263918 (S.D. Tex. Nov. 29, 2005).  This Court finds that, in light of the complete lack of evidentiary support for petitioner's contention, petitioner has failed to meet his burden to establish that he is entitled to relief.

To the extent that petitioner is alleging that his counsel was ineffective in failing to have him testify, the Court likewise rejects that claim.  In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.  A petitioner seeking relief must demonstrate that counsel's

performance was deficient *and* that the deficient performance prejudiced his defense.   See Strickland, 466 U.S. at 697.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.   See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).   "Counsel's performance is deficient if it falls below an objective standard of reasonableness."   Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.   See Strickland, 466 U.S. at 689.   "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"   Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.   See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   Strickland, 466 U.S. at 694.   In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."   Id.   In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."   Crockett, 796 F.2d at 793.

Petitioner bears the burden of proof when asserting an ineffective assistance of counsel claim.  Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong.  Strickland, 466 U.S. at 697.

A claim of ineffective assistance of counsel is a mixed question of law and fact. Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Therefore, this Court must defer to the state court on such claims unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

This Court notes that a decision whether to put a criminal defendant on the stand "is a 'judgment call' which should not easily be condemned with the benefit of hindsight."  United States v. Garcia, 762 F.2d 1222, 1226 (5th Cir. 1985); see also United States v. Mullins, 315 F.3d 449, 453 (5th Cir. 2002), cert. denied, 541 U.S. 1031 (2004).  For the following reasons, that is especially true in this case.

Based on the representations made in the memorandum in support of his application, petitioner would have apparently testified that he loaned the vehicle used in the robbery to Charles Holmes and Bryan Loper for the sole purpose of going to a convenience store.  Holmes and Loper then used the vehicle as a getaway car when they robbed the bank.  After the robbery, Holmes and Loper, wanting to return the vehicle, then picked petitioner up on St. Charles Street as he was talking

to "B-Dog."  Petitioner, knowing nothing of the robbery, got in the vehicle with Holmes and Loper, and that is why he was apprehended in the vehicle within minutes of the robbery.[19]

There are at least two obvious reasons counsel may have chosen not to call petitioner to testify to that effect.  First, petitioner's contention that the robbers stopped to pick up the unsuspecting petitioner while they were in the very midst of their getaway and with the evidence of their crime still in the vehicle is, at best, implausible.  Understandably, defense counsel may well have decided that it was better to try to simply poke holes in the state's case rather than risk alienating the jurors by presenting such testimony.  Second, even aside from the content of the proposed testimony, the Court notes that having petitioner testify was a dicey proposition.  Petitioner himself notes that he has been diagnosed as "mild [sic] mental retarded and a low intellectual level."[20]  Moreover, the record does in fact reflect that he dropped out of school when he was in third grade, has a learning disability, and is mildly mentally retarded.[21]  In light of his deficits, the danger of having petitioner testify and, more importantly, subjecting him to cross-examination at the hands of a skilled prosecutor was hardly insignificant.  This Court cannot say that counsel performed deficiently in choosing to avoid that risk, especially in light of the questionable value of petitioner's testimony even if all went well.

---

[19]  See Rec. Doc. 3, supporting memorandum, pp. 5, 15, and 17.

[20]  Rec. Doc. 3, supporting memorandum, p. 11.

[21]  State v. White, 792 So.2d 146, 154-55 (La. App. 5th Cir. 2001) (No. 01-KA-134); State Rec., Vol. II of II.

In his supporting memorandum, petitioner also appears to argue that counsel was ineffective in failing to investigate his alibi and in not having "B-Dog" testify at trial. Those contentions are likewise meritless.

To the extent that petitioner is contending that counsel failed to perform an adequate investigation into his alibi, his claim falls woefully short. A petitioner asserting a claim for inadequate investigation bears the burden to provide factual support for his allegations as to what further investigation would have revealed. Moawad v. Johnson, 143 F.3d 942, 948 (5th Cir. 1998). He has provided no such factual support for his contentions.

To the extent that petitioner is contending that counsel should have called "B-Dog" to testify, his claim is similarly deficient. "[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative." Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002) (citing Sayre v. Anderson, 238 F.3d 631, 635-36 (5th Cir. 2001)). To show the prejudice required to support an ineffective assistance claim premised on the failure to call a witness, a petitioner "'must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial.'" Evans, 285 F.3d at 377 (quoting Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985)). Petitioner furnished neither the state courts nor this Court any evidence in support of his bald assertions regarding "B-Dog." He has not provided an affidavit from that potential witness or any other corroboration that he would have testified in a manner consistent with petitioner's version of the facts or, for that matter, that he would have testified at trial at all. Petitioner has, therefore, failed

to establish either that counsel's performance was deficient or that prejudice resulted from the failure to call "B-Dog" as a witness.

Accordingly, petitioner has failed to demonstrate that the state court's decision rejecting his claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Applying the AEDPA's deferential standard, this Court rejects those claims.

### Limitation on Recross-Examination

Petitioner's final claim is that his rights were violated when the trial judge refused to allow recross-examination of Lt. Edward Nowell. Petitioner contends that on cross-examination Nowell testified that five minutes elapsed between the time he heard the police bulletin about the robbery and the time he stopped the vehicle. However, on redirect examination, Nowell said that nine minutes elapsed. At that point, defense counsel requested that she be allowed recross-examination based on the fact that the Nowell changed his testimony. The trial judge denied that request and indicated that counsel could address that issue in her argument to the jury.[22]

When petitioner presented this claim during his post-conviction proceedings, the state district court denied the claim, finding that petitioner had failed to meet his burden of proof.[23] The

---

[22] See Rec. Doc. 3, supporting memorandum, pp. 17-18. The trial transcript is not included in the record furnished to this Court. However, for the purposes of this decision, the Court will accept as true petitioner's allegations regarding this claim.

[23] State Rec., Vol. II of II, Order dated June 28, 2004.

Louisiana Fifth Circuit Court of Appeal found "no error" in that ruling,[24] and the Louisiana Supreme Court denied petitioner's related writ application without assigning reasons.[25] Because this claim presents a mixed question of law of fact, this Court must defer to the state court ruling unless petitioner demonstrates that the decision on the claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  See Wilkerson v. Cain, 233 F.3d 886, 890 (5th Cir. 2000); 28 U.S.C. § 2254(d)(1).

Petitioner has made no such showing in the instant case.  Once a trial court has permitted as a matter of right sufficient cross-examination to satisfy the Sixth Amendment, it is within the court's authority to limit further cross-examination.  See Smith v. Collins, 964 F.2d 483, 486 (5th Cir. 1992).  Moreover, unlike cross-examination, a criminal defendant has *no* constitutional right to *recross*-examination, except in the limited circumstance where a "new matter" is brought out on redirect.  See United States v. Ross, 33 F.3d 1507, 1518 (11th Cir. 1994); see also United States v. Davis, 108 Fed. App'x 131, 136 (5th Cir. 2004), cert. denied, 544 U.S. 967 (2005); United States v. Morris, 485 F.2d 1385, 1387 (5th Cir. 1973); Hale v. United States, 435 F.2d 737, 749-50 (5th Cir. 1970).

In the instant case, petitioner makes no allegation that counsel was curtailed in any way during her *cross*-examination of Nowell on the issue of time that elapsed before apprehension. Although Nowell allegedly changed his answer to some extent on redirect, the timing issue was not

---

[24]  State *ex rel.* White v. Cain, No. 04-KH-887 (La. App. 5th Cir. July 27, 2004) (unpublished); State Rec., Vol. II of II.

[25]  State v. White, 908 So.2d 684 (La. 2005) (No. 2004-KH-2403); State Rec., Vol. II of II.

a "new matter" so as to trigger a right to recross.  Rather, even petitioner asserts that the timing issue had already been addressed "repeatedly."[26]  Under these circumstances, the Court finds that the trial judge did not abuse his discretion in refusing to allow repetitive interrogation on recross-examination on this issue.[27]  Rather, as the judge apparently indicated, the record had been made on the issue and defense counsel could address any discrepancies in Nowell's testimony in her argument to the jury.

Accordingly, petitioner has failed to demonstrate that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Applying the AEDPA's deferential standard, this Court rejects that claim.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Ronnie White be **DISMISSED WITH PREJUDICE**.

---

[26]  Rec. Doc. 3, supporting memorandum, p. 17.

[27]  Even as to *cross*-examination, the United States Fifth Circuit has noted:

> The Confrontation Clause does not guarantee defendants cross-examination to whatever extent they desire.  A trial judge has discretion to impose reasonable limits on cross-examination based on concerns about harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.

Kittleson v. Dretke, 426 F.3d 306, 319 (5th Cir. 2005) (internal quotation marks and citations omitted); see also Summers v. Dretke, 431 F.3d 861, 877 (5th Cir. 2005).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this seventh day of September, 2006.


**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**